[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CLASS CERTIFICATION
In the above-captioned action, the plaintiffs allege that on July 28, 1999, defendant Sikorsky Aircraft Corp. negligently allowed the public water supply in an area of Stratford and Shelton to be contaminated by a back flow released during a test of Sikorsky's sprinkler system (Count 1), and negligently failed to warn the public about and respond to the situation (Count 2). The plaintiffs allege that defendant Bridgeport Hydraulic Company ("BHC"), which operates the public water supply system in the area, was negligent in failing to prevent the contamination and failing to act promptly enough to investigate it and notify users (Count 3). The plaintiffs allege that BHC's actions constituted violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq. (Count 4) and breached the implied duty of good faith and fair dealing that the plaintiffs allege is part of contract between BHC and its customers (Count 5.)
The plaintiffs have withdrawn a CUTPA claim against Sikorsky.
Seven plaintiffs were named in the amended complaint filed on January 2, 2001. Plaintiffs Hedy Gramazio, Helga Kobetitsch, Henry Wolf and Dorothea Wolf filed withdrawals of their claims on April 6, 2001. At the hearing on the motion for class certification, plaintiffs' counsel stated that another plaintiff, Henry Litt, had been determined to reside outside the area affected by the contamination, and that he was no longer being proposed as a class representative. The remaining plaintiffs besides Mr. Litt, who intends to proceed on his individual claim, are Dawn Ouellet, individually and as next friend of her minor children, Kyle Ouelett and Alicia Ouelett, and Theresa Harrick.
It is undisputed that after the incident BHC issued $25.00 credits to each customer in the affected zone and that it further sent notices to customers inviting them to submit claims for compensation for any losses claimed to have resulted from the disruption of water service.
Proposed Class
In their motion for class certification, which was filed on February 23, 2001, the remaining plaintiffs defined the class for which they sought certification as "the class consisting of all residential customers of the Bridgeport Hydraulic Company whose water was contaminated on or about July 28, 1999 as a result of the back flow of contaminated water from the Defendant's plant during a test by the Defendant of its sprinkler system." The reference to "the Defendant" is apparently to defendant Sikorsky.
When the plaintiffs filed their three-page motion for class CT Page 6806 certification they filed no accompanying brief or materials to establish that they met the criteria for class certification. In the case management order filed on March 9, 2001, the court set May 14, 2001, for a hearing on any motion for class certification. The plaintiffs filed their brief in support of the class certification motion on May 10, 2001, the same day that BHC filed a brief in opposition. Sikorsky's brief is dated May 11, 2001.
At the hearing, the plaintiffs orally revised their description of the classes they propose as follows:
Class 1. a class of residents of the affected area whose claims are limited to compensation for the inconvenience of suffering an interruption in their water supply for a number of hours and the expense of buying bottled water or discarding food, and
Class 2. a class of residents of the affected area who suffered transient physical symptoms, such as upset stomachs or diarrhea, from ingestions of contaminated water.
The plaintiffs do not propose to represent commercial users of water in the affected area.
The plaintiffs offered to restrict their motion to the first of these classes if this court determined that issues of causation were too individualistic in nature as to the second category of potential claimants. Both Ms. Herrick and Ms. Oulett claim to have suffered physical symptoms from ingestion of water during the period of contamination. Their offer to restrict the class claims to the first class identified above apparently means that they propose to pursue their individual claims for damages for physical symptoms and represent a class only with respect to the other kinds of damages indicated in the description of the class.
Standard of review
Conn. Gen. Stat. § 52-105 provides that one or more parties may assert a claim for the benefit of numerous other parties who are similarly situated.
Practice Book § 9-8 provides that an action "may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The CT Page 6807 prerequisites of P.B. § 9-7 are that "(1) the class is so numerous thatjoinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
The Connecticut Supreme Court has ruled that the Connecticut rules for class certification are substantially similar to Rule 23 of the Federal Rules of Civil Procedure and that federal case law construing that rule may be used as an aid to construction of the state provisions. Marr v.WMX Technologies, Inc., 244 Conn. 676, 680-681 (1998). The movant bears the burden of establishing that each requirement of the Practice Book rules is met. Arduini v. Automobile Ins. Co. of Hartford,23 Conn. App. 585, 589 (1990).
While the court must analyze the plaintiffs' claims to determine whether the criteria for class certification are met, the determination of class action status is procedural, not substantive, and "whether a class action is proper does not depend on the merits of the litigation."Marr v. WMX Technologies, supra, 244 Conn. 680.
The federal courts have noted that class actions serve an important function in the system of civil justice because they permit plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." Deposit Guaranty National Bankv. Roper, 445 U.S. 326, 338 rehearing denied, 446 U.S. 947 (1980).
Are all criteria met?
Documents submitted by BHC indicate that there were approximately 290 residential water customers in the water delivery zone affected by the contamination that occurred on July 28, 1998. The number of people residing in the living units for which the customers have contracted for water service may increase the number of claimants by three or four times. One customer is a condominium complex with approximately 156 units. Potentially, the class of residents affected, even to the minimal extent of experiencing interruption of water service, is at least 800.
The requirement of numerosity is met, and the plaintiffs allege that some of the losses that they claim to have sustained are the same as those of others who resided in homes to which water service was interrupted. The court finds, however, that the plaintiffs have not demonstrated that the named plaintiffs will fairly and adequately protect the interests of the proposed class. CT Page 6808
Adequacy of representation of the class
Contrary to the assertions of the defendants, the individuals who serve as class representatives do not have to be legally sophisticated, nor do they have to be legal experts concerning the claims asserted. Surowitzv. Hilton Hotels Corp., 383 U.S. 363, 366, rehearing denied, 383 U.S. 363
(1966); Kamen v. Kemper Financial Services, Inc., 908 F.2d 1338, 1349
(7th Cir. 1990), reversed on other grounds, 500 U.S. 90 (1991); Trautzv. Weisman, 846 F. Sup. 1160, 168 (S.D.N.Y. 1994); Walsh v. NationalSafety Assoc., 44 Conn. Sup. 569, 586-88 (1996), affirmed, 241 Conn. 278
(1997). Class representatives must, however, demonstrate that they and their chosen counsel will adequately pursue the action on behalf of the class, without conflict arising from their individual goals in the litigation. Anchem Products, Inc. v. Windsor, 521 U.S. 591,117 S.Ct. 2231,138 L.Ed. 689 (1997). The adequacy of class counsel to conduct a litigation of the scope presented must be assessed as part of the consideration of adequacy to represent a class. Id., 626 n. 20.
Counsel for the proposed class representatives have already had great difficulty with the activities necessary to pursuing a case as a class action. At a case management conference on February 2, 2001, the court required the plaintiffs to file and claim their motion for class certification for adjudication by May 1, 2001, a date that the court determined was appropriate given the amount of discovery represented to be needed for presentation of the issues relevant to the issue of class certification. The plaintiffs filed their motion for class certification on February 20, 2001, without a brief supporting their conclusory, one-sentence representations that each of the criteria set forth in P.B.9-7 and 9-8 was met. After filing their bare bones motion, the plaintiffs then filed a request for adjudication which in fact requested that the motion for class certification not be adjudicated promptly because they had not completed discovery and were not prepared to support their motion. They did not specify any particular date by which they proposed to present the motion on its merits. This method of proceeding suggested an unfamiliarity with the basic procedures for pursuing class certification, namely, the prior completion of discovery geared to the relevant criteria and an informed analysis of the various claims to determine how the class should be defined.
The plaintiffs eventually filed a brief on the Thursday before the hearing on class certification that had long been scheduled for Monday, May 14, 2001. The brief was filed more than a week after the deadline for filing a request for adjudication on a motion that was supposed to have been fully briefed before a request for adjudication was filed. CT Page 6809
The plaintiffs' motions, briefs and arguments display unfamiliarity with the issues involved in representing a class.
Though only one class is proposed in the motion for class certification and in the subsequent brief, at oral argument the plaintiffs proposed a different plan, the creation of two or more classes. They also volunteered to restrict the class to those who did not allege suffering of physical symptoms among their damages and invited the court to design subclasses to address any problems with regard to typicality of claims or differences among the potential claimants. They invited the court to divide the proposed class into such subclasses as the court deemed appropriate in order to avoid conflicts or to reflect that not all class members might have standing to assert all claims. It is not, however, the role of the court to design a class action, but rather of the class representatives to propose and define the class or classes they seek to represent, and to demonstrate that the criteria for class certification are met for the class they propose. See United States Parole Comm'n v.Geraghty, 445 U.S. 388, 408 (1980); Lundquist v. Securities Pac. Auto.Fin. Serv. Corp., 993 F.2d 11, 14 (2d Cir. 1993).
The court is troubled by the plaintiffs' lack of careful analysis of the issues that will be presented if the case proceeds as a class action. Various members of the proposed classes have different claims. The plaintiffs allege in Count 5 that BHC breached its contracts with its customers. Though the plaintiffs argue that persons who are not customers of BHC are third party beneficiaries of the contract to provide water to a customer's dwelling unit, no facts are alleged in the complaint to support the distinct elements of such a claim. See Grigerik v. Sharpe,247 Conn. 293, 311-12 (1998); Micci v. Thomas, 55 Conn. App. 14, 16-17
(1999). While some residents are also customers, with standing to assert the claims in Count 5, many residents are not customers, and they assert only the claims in Counts 1, 2, 3 and 4. The plaintiffs have not, moreover, proposed to include all customers of the affected zone in the class, but only those customers who reside in the living units served under each contract for water service. Customers could, of course, include landlords who rent out the properties affected to tenant residents; and such customers are excluded from the proposed definition of the class. The plaintiffs displayed no recognition of the problems posed in representing hundreds of plaintiffs, some of whom would be asserting all of the claims made in the various counts of the complaint and some of whom would be asserting only some of those claims.
In their brief, the plaintiffs proposed a single class that would include persons whose losses included not only the cessation of water supply and expenses of obtaining water from other sources, but also those who claimed to have suffered upset stomachs, diarrhea, and other physical CT Page 6810 ailments as a result of ingesting contaminated water. The defendants filed briefs and made arguments that persons who ingested water after receiving warnings would be in a different position than those who received no warnings, and that people who ingested water before it was reasonably possible for BHC to have issued warnings would have a claim against Sikorsky but not against BHC. After hearing those arguments, the plaintiffs offered in oral argument to redefine the class to omit from the class persons with claims of physical symptoms, even though the plaintiffs themselves claim to have suffered such symptoms, proposing that the three named plaintiffs assert their individual claims for physical injuries while two of them, Ms. Herrick and Ms. Ouellett, also represent a class, or perhaps one class of residents and one of customers, with regard to claims for economic damages and inconvenience. These three plaintiffs thus suggest that while they themselves may pursue claims for physical symptoms, members of the class they seek to represent should be allowed, by the definition of the class, to pursue only claims for expenses and inconvenience in experiencing interrupted water service. The mere making of such a proposal suggests an inadequate understanding of the obligation of class representatives to act in the best interest of the class, without expecting to pursue special or different treatment for themselves.
One part of the issue of adequacy of representation of the class is adequacy of class counsel. Anchem Products, Inc. v. Windsor, supra,521 U.S. 626 n. 20; Walsh v. National Safety Assoc.,
supra, 44 Conn. Sup. 586. The qualifications of counsel are to be considered in determining the issue of adequacy of representation;Walters v. Reno, 145 F.3d 1032, 1046 (9th Cir.), cert. denied, 526 U.S. 1003 (1998); Duprey v. Conn. Dept.of Motor Vehicles, 191 F.R.D. 329, 338 (D.Conn. 2000); Groover v.Michelin North America, Inc., 187 F.R.D. 662, 669 (M.D.Ala. 1999); since class representatives propose to pursue not simply their own claims, but the claims of hundreds of others whose circumstances may include different degrees of exposures and different damages, necessitating dedication of considerable resources and staffing. The attorneys selected by the plaintiffs have never been lead counsel in a class action. Attorney Rosnick stated in open court that he had once assisted another lawyer with whom he was sharing space when that lawyer represented a class in a consumer case against a bank. He did not state that he had any further experience in representing a class, nor did his co-counsel Attorney Kathleen Krygier, who is a lawyer in a two-lawyer firm in Stratford. Attorney Rosnik's brief affidavit does not describe any representation that included multiple claimants, let alone hundreds. Attorney Krygier did not submit an affidavit concerning her experience, but only a resume-style summary of her bar memberships and affiliations.
While this court recognizes that there is always a first time for CT Page 6811 representing a class of plaintiffs, in the absence of a history of prior experiences as class counsel, the court looks to other indications that the proposed counsel for a class is able to undertake the challenges involved. The disorganized presentation of the motion for class certification is not reassuring, nor does counsel's prior general experience support a finding that they are equipped and prepared to represent a class. Attorney Rosnick filed an affidavit averring in very summary fashion that he has handled complex cases. Asked at oral argument for examples, Attorney Rosnick mentioned murder trials and medical malpractice actions. While such cases certainly require skill, they do not present the organizational challenges of completing discovery aimed at hundreds of class members and organizing the proof of hundreds of differing claims for damages. Neither Attorney Rosnick nor Attorney Krygier, who prepared the brief in support of class certification, gave the court any indication that they are equipped to complete the interviews and document preparation necessary to represent so many people in a single case. Attorney Rosnick represented that there are six lawyers in his firm, but he did not state than anyone other than him-self has any experience in representing plaintiffs in class actions or would be available to work on this case. Attorney Krygier is employed in a firm with one other lawyer. No information was provided to the court with regard to the amount of paralegal and support staff and other resources available to pursue in a responsible manner claims that might include hundreds of individual hearings concerning damages. Persons included in a certified class are subject to the res judicata effect of the resolution of their claims. See Eisen v. Carlisle Jacquelin, 417 U.S. 156, 176
(1974); Barrett v. Southern Connecticut Gas Co., 172 Conn. 352, 371
(1977). The adequacy of class counsel is certainly a factor to be weighed in considering whether the rights of absent persons should be entrusted to class treatment.
Attorney Rosnick's suggestion that the present plaintiffs might remain individual plaintiffs with regard to claims of physical symptoms, while limiting their class representation role to more minor injuries, suggests a worrisome lack of awareness of the duty his clients would have, and that he would have as class counsel, to conduct the litigation in a manner that fairly benefits the interests of the class, not simply the individual interests of the class representative. The alacrity with which he proposed dropping absent class members' claims of physical injury leads this court to doubt that the present plaintiffs or their counsel have a reliable grasp of their obligations, especially in the event of settlement negotiations. In such negotiations, the named plaintiffs have an interest in recovering not only for the injuries common to the class as they have now defined it, but also for their more considerable injuries, which allegedly include physical symptoms. Their interest in their distinct and more considerable claims creates a potential for CT Page 6812 conflict with their obligation to serve the collective interest of the class. The maintenance of a class action as to lesser claims may not be used as a device to give weight to the settlement value of the claims of the named plaintiffs; rather, class representatives and their counsel must be prepared to give equal services to all class members. Such adequacy of representation has not been demonstrated.
Conclusion
For the reasons set forth above, the present motion for class certification is denied. Any motion to join the action as a party plaintiff should be filed by July 28, 2001.
Beverly J. Hodgson Judge of the Superior Court