[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
The Sewer Authority of the City of Norwich levied benefit assessments against approximately 80 different pieces of property. Forty-one of the property owners decided to appeal the benefit assessment made against each of their properties and filed a sewer assessment appeal within the statutory time period under § 7-250 of the General Statutes. (Count One.) In the second count, for a declaratory ruling, the plaintiff's challenge the way in which the defendants Sewer Authority and City determined the "benefit" attributable to each of their properties and seek a ruling regarding the legality of the defendants' actions.
Pursuant to Practice Book § 10-30 et seq, the defendants have moved to dismiss both counts for lack of subject mailer jurisdiction.
 First Count
The defendants characterize what the plaintiffs have done here as a "collective appeal of a multitude of sewer assessments involving different parties." What purports to be a sewer assessment appeal under § 7-250 is really here a "quasi-class action" suit which is not authorized by the statute.
Given the claim, the complaint must be examined before the legal issues are discussed. The first forty-one counts as to each property owner are framed as follows, using the first paragraph as an example: CT Page 12362
 "1. On November 24, 1999, the plaintiffs, Michael A. and Linda S. Bertelson, were the owners of a certain piece of property in the City of Norwich known as 24 Manwaring Road."
The next forty paragraphs follow the same format with each paragraph setting forth different property owners as plaintiff with, of course, different properties. Paragraph 44 states that on November 24, 1999, the defendant Sewer Authority levied a benefit assessment of $13,451.90 against the property of Eugene and Edith Frankle of 11-13 Manwaring Road and in the amount of $5,962.62 against each of the other plaintiffs' respective properties as set forth above (referring to the first 41 paragraphs), in connection with the East Great Plains Southwest Section Sewer Improvement of the City of Norwich, said assessments were filed with the City and Town Clerk of Norwich on November 24, 1999. See Exhibit A, attached hereto." (Exhibit A lists 87 properties.) Paragraph 45 refers to the same benefit assessment against a property at 1 Elk Drive, Norwich, made on November 29th. Paragraph 46 says the plaintiffs "are aggrieved by the levies of said sewer assessments by the defendants because said sewer assessments exceed the value of the respective special benefits accruing to the respective properties of the plaintiffs by virtue of said sewer construction." The complaint goes on to allege that the defendants acted illegally in levying the assessments. The Wherefore clause says "the plaintiffs' appeal from the levies of said sewer assessments and pray that said assessments be held void or reduced to a level corresponding to the value of the special benefits accruing to their respective properties."
It should be noted that in the "Citation and Recognizance" each of the plaintiffs are listed as principals with a Ms. Vendetti as surety and they "are hereby recognized as jointly and severally bound unto (the defendants) in the sum of $250 conditioned that the applicants shall prosecute their applications to effect and comply with and conform to the orders and decrees of the court. . . ."
The question presented is whether the motion to dismiss filed by the defendants should be granted against this complaint based on the argument that the court lacks subject matter jurisdiction to hear this case.
The defendant's base their argument against the first count largely on their characterization of the plaintiffs' appeal as a class action or a quasi-class action. They point to the language in Zizka v. WaterPollution Control Authority, 195 Conn. 682 (1985). There, the plaintiffs who sought declaratory and injunctive relief regarding a sewer assessment levy had previously brought an appeal where they "sought" to represent CT Page 12363 the class of residential real estate owners of the district subject to the assessment." Id. p. 685. Commenting on this prior action, the court said:
 "The court, Dannehy, J., dismissed the action on jurisdictional grounds. The first count was dismissed on the grounds that § 7-250 does not authorize pursuit of an administrative appeal as a class action, nor does it permit the court to hear a § 1983 claim as part of such appeal. The second and third counts were dismissed on the grounds that since an administrative appeal under § 7-250 is the exclusive method of challenging sewer assessments, the court lacked jurisdiction to hear an attack on such assessments in a collateral proceeding, and further that the court lacked jurisdiction under 28 U.S.C. § 1341 to hear a § 1983 claim against the imposition of a state or local tax. The plaintiffs appealed the dismissal to this court. We dismissed the appeal and subsequently denied the plaintiffs' petition for certification."
Query as to the precedential value of Judge Dannehy's decision, the appeal from it was dismissed and the Supreme Court subsequently denied the plaintiffs' petition for certification. In 195 Conn. 682, the court explicitly did not give res judicata effect to Judge Dannehy's decision in deciding whether the plaintiffs should be entitled to declaratory or injunctive relief.
But having said all that, it would appear that the defendants are correct in arguing that class actions are not permitted under § 7-250. The statute explicitly states: "No such appeal shall stay proceedings for the collection of the particular assessment upon which the appeal ispredicated but the appellant shall be reimbursed for any overpayments made if, as a result of such appeal, his (sic) assessment is reduced."
The statute seems to envisage appeals from assessment on specific properties which are actually subject of the appeal in the first instance. That argument may be conclusory, however, since if there is class certification the relief envisaged by the just quoted language can be applied to all class members who, in effect, become parties to the action in terms of the relief they can expect.
A more telling argument against class actions under § 7-250 is the requirement in an administrative appeal that aggrievement must be both pleaded and proved. Walls v. Planning Zoning Commission, 176 Conn. 475, CT Page 12364 479 (1979) (cited by defendants). From a practical point of view, and class actions are supposed to be based on convenience and equitable considerations, how would the putative class representative under Practice Book § 9-7 be able to show aggrievement for parties he or she seeks to represent. As the defendants point out, how can the putative class representative claim to be "specially and injuriously affected" by property assessments in which he or she does not have any interest.
The leading case in this area is Deposit Guaranty National Bank v.Roper, 445 U.S. 326 (1980), which referred to the reason for the historical development of the class action:
 The aggregation of individual claims in the context of a class-wide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device, Id. p. 339 (In Marr v. WMX Technologies, 244 Conn. 676, 681 (1998), our court said federal case law can be resorted to to interpret the ambit of our class action procedure.
It can hardly be said that there is a crying need to interpret a statute giving private property owners the right to appeal sewer assessments as a vehicle for class action suits — how can it be said that a usually discreet number of property owners who individually may have a real economic stake in the amount of such assessments need the protection of a class action if their rights are ever going to be vindicated? It is difficult also to see how the numerosity requirements for class actions can be met in § 7-250 appeals. See Practice Book § 9-7(1). The class in such a case is not unusually numerous. The Second Circuit has emphasized mere numbers cannot be the sole criterion and considerations of practicability should enter the equation in applying the numerosity requirements. DeMarco v. Evans, 390 F.2d 836, 845
(CA 2, 1968). But here, the putative class is not widely dispersed, the amount of each claim is not enormous and although it is preferable to have one lawsuit instead of forty, the advantage of that possibility can be achieved by permissive joinder (Practice Book § 9-4), without the need to manufacture a class representative. See discussion in Vol. 1, § 3.06, Newberg on Class Actions on numerosity requirements.
In any event, the court will assume that class actions are inappropriate under and not authorized by § 7-250. If that is so, CT Page 12365 then the defendants are indeed right in arguing that a motion to dismiss would lie if this were indeed a class action. That is if the statute only allows appeals by individual property owners who are aggrieved because of an assessment then a class action would not be authorized by § 7-250
and the court would lack subject matter jurisdiction. As said by Judge Pittman in Broadnax, et al v. City of New Haven, et al, 23 Conn.L.Rpt. 45, 47 (1998), after an instructive review of the appellate cases:
. . . "when the statutes withhold authority from the Superior Court to readjudicate a prior administrative agency decision unless certain prerequisites are met, the lack of those prerequisites is equivalent to the lack of subject matter jurisdiction."
The same thing was said in an earlier case, Conn. Allied Business LegalRights Assoc. v. Woodrow Wilson Gaitor, 10 CLT No. 13, p. 12 (1984):
 "Where a statute or court rule sets prerequisites to suit by a particular plaintiff, a plaintiff not meeting the statutory criteria lacks standing and the court is said to lack jurisdiction over the case. Thus, where a statute allows only an aggrieved party to appeal from an agency decision, the court lacks subject matter jurisdiction over an appeal brought by a non-aggrieved party. Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 493 (1978)."
The complaint must be examined to determine whether, in fact, it embodies a class action — that is the only way to resolve the jurisdictional issue. Certain interpretative rules must be applied to this task. In a case where a jurisdictional attack was also made, the court said that: "Since the motion to dismiss filed by the . . . defendants does not seek to introduce facts outside the record it is equivalent to our old motion to erase and admits all well pleaded facts, the complaint being construed most favorably to the plaintiff." Duquayv. Hughes, 191 Conn. 222, 227 (1983); American Laundry Machinery, Inc.v. State, 190 Conn. 212, 217 (1983). It is also true that the rule is well established that courts must indulge every presumption in favor of subject matter jurisdiction. Gurliacci v. Mayer, 218 Conn. 531, 543
(1991), and why should this not be so when pleadings are being examined in the face of a jurisdictional attack?
Looking at this complaint in its most favorable light — that is, to avoid jurisdictional attack — it does not seem to be a class action or have the effect of a class action. The plaintiffs who have taken the appeal constitute approximately one-half of all the property CT Page 12366 owners subject to the assessment. There is no attempt by all or any one of them indicated on the face of the pleadings to act as representative to any property owners who have not sued but might be affected by the sewer assessment. This is not Zizka. There, as noted, the particular plaintiffs "sought to represent the class of residential real estate owners in the district subject to the assessment,"195 Conn. at p. 685.[1] Here, the plaintiffs do not seek to sue as "one or more members of a class . . . as representative parties on behalf of all," (Practice Book § 9-7). Giving the complaint that reading most conducive to avoiding a subject matter jurisdiction attack, it can be read as an assertion by each plaintiff that each one of them owns property (par. 1 through 41) that each one of them is aggrieved by levy of a sewer assessment as regards their "respective," that is individual properties, and that in the "wherefore" clause each plaintiff demands relief only as to their own individual property. Each plaintiff "pray that said assessments be held void or reduced to a level corresponding to the value of the special benefits accruing to their respective properties.
A class action is sui generis; a "walks like a duck, quacks like a duck, it must be a duck" analysis cannot be used. The complaint can be read as an appeal by each plaintiff to void or modify each of their assessments with none of them seeking to represent the interests of anyone else.
In other words, what these people are attempting to do is similar to what the individual business plaintiffs tried to do in Charlton Press,Inc. v. Sullivan, 153 Conn. 103, 105 (1965). There, the plaintiffs were criticized for joining in a tax appeal when their claims did not arise out of the same transaction, but the courts heard and decided the matter. In other words, what the plaintiffs did in Sullivan, as what the plaintiff seek to do here, is to have "permissive joinder" of their cases under Practice Book § 9-4. There is not much in the way of appellate law on this procedural device. See "Practice Book Annotated Superior Court Civil Rules," Horton Knox, pp. 298-299, although our rule is similar in substance to Federal Rule 20 the federal permissive joinder rule, see Moore's Federal Practice 3d edition, § 20.01 et seq.
Whether joinder is appropriate does not present a question of subject matter jurisdiction, but must be addressed by a motion to strike. Practice Book § 10-39(4).
To look at the problem presented by this case from another perspective, even if for Practice Book § 9-4 or permissive joinder purposes each count should not be joined in one suit because they do not arise out of the "same transaction or series of transactions" that does not mean as to each count or plaintiff there is no subject matter CT Page 12367 jurisdiction in a court of competent jurisdiction to hear the claim presented in each count. In one of its briefs, the defendants argue "there is simply no statutory authority to combine a group of individual appeals from assessments of individual properties into one collective appeal . . . It makes no difference whether or not the combined appeals are called a `class action;' the critical fact is that the governing statutes do not authorize such appeals." But the statutes do authorize individual appeals by individually aggrieved plaintiffs and by joinder the plaintiffs ask nothing more than that their individual claims be heard. Besides under permissive joinder, courts have inherent power to consolidate separate cases and try them together. Rode v. Adley Express Co., Inc.,130 Conn. 274, 277 (1943) — why would they not have that power from the earliest stages of litigation. If the courts have that power why can't litigants rely on permissive joinder to initiate litigation? What legislative policy expressed in § 7-250 is being violated by joinder of individual cases ab initio, reserving the right to strike the joinder if it is otherwise not appropriate on non-jurisdictional grounds? The presumption in favor of subject matter jurisdiction should govern the interpretation of the scope and ambit of statutory and Practice Book language. The motion to dismiss the first count is denied, but the court makes no decision as to whether permissive joinder should be permitted in this case. That could await a motion to strike and then the question would be, if such a motion were to be granted, can each party plead over into a separate action. But that is a problem for another day.
 Second Count
The court will not dismiss the count asking for declaratory relief.Stafford Higgins Industries, Inc. v. City of Norwalk, 245 Conn. 551,578, et seq. (1998), explicitly recognizes the right to bring a declaratory judgment action and a statutory appeal. In Wilson v. Kelley,224 Conn. 110, 116 (1992), the court quoted a Maine case with approval which said that "declaratory judgment statutes do not create a new cause of action; (their purpose) is `to provide a more adequate and flexible remedy in cases where jurisdiction already exists.'" Wilson presagedStafford Higgins and in light of this characterization of declaratory judgments, the court not having dismissed the first count will not dismiss the second count on the basis of arguments previously discussed.
The defendants also raise an exhaustion of administrative remedies argument which, if well taken, would implicate subject matter jurisdiction, Hyllen-Davey v. Planning Zoning Commission,57 Conn. App. 589, 592 (2000). The second count challenges the validity of the bond ordinances claiming the city council's passing of the ordinance improperly bypassed the city's charter. The defendants advance their exhaustion argument by citing a provision of the city charter which CT Page 12368 states that: "the validity of such bond ordinance shall not thereafter be questioned by either party plaintiff or a party defendant except in asuit action or proceedings commenced prior to the expiration of such twenty days." It is no doubt true that the Superior Court has no jurisdiction where there exists an adequate administrative remedy that has not been exhausted. Raymond v. Rock Acquisitions Ltd. Partnership,50 Conn. App. 411, 415 (1998), but the just quoted language does not appear to refer to an administrative remedy but attempts to limit the time within which suits may be initiated in court — that is, it is a statute of limitations. The word "suit" has its ordinary meaning referring to litigation brought in a court and not complaint made to an administrative agency. "Action" is defined as "a judicial proceeding either in law or in equity, to obtain relief at the hands of a court," Ballentine's Law Dictionary, 3d edition. "Proceeding" in the same work is defined as follows "in ordinary usage, including all methods of invoking the action of courts and applicable generally to any step taken by a suitor to obtain the interposition or action of a court," also see definition of "proceeding" in Hyllen-Davey v. Planning Zoning, supra, at 57 Conn. App. 596-597.
An exhaustion issue is not raised; the limitations defense can be raised by special defense.
The motion to dismiss the second count requesting declaratory relief is denied.
Corradino, J.